HENRY C. HOMEYER, The (UNITED STATES v.). See Case No. 15,353.

----

## Case No. 6,375.

### The HENRY CLAY.

[N. Y. Times, Sept. 9, 1852.]

District Court, S. D. New York. 1852.

MANSLAUGHTER—ACT 1838, § 12 — STEAMBOATS — NEGLIGENCE OF OFFICERS—PROPER PRECAUTIONS.

[Under Act Cong. 1838, § 12 (5 Stat. 306), providing that misconduct, negligence, or inattention by the officers, etc., of a steamboat, resulting in loss of life, shall be punished as manslaughter. such officers, etc., are liable for any act or omission in not properly regulating the fires or amount of steam, or any neglect of duty likely to create danger, or in not taking proper precaution, where loss of life is caused thereby.]

In admiralty.

[The following charge to the grand jury in relation to the law of the United States for the punishment of offenders who might cause the loss of life by negligence or inattention to their duties on board of steamboats, was delivered by]

BETTS, District Judge. Your services are required on this occasion in the aid of the criminal jurisprudence of the laws of the United States. It will devolve upon you to inquire into the criminal acts of individuals who are charged with offences against the laws of the United States, which although cognizable by you are triable in this court, or the circuit court of the United States. The docket shows a large number of cases, but the larger number possesses but little interest. The first charge however, relates to the destruction of the steamboat Henry Clay, and I find that several persons, officers, owners and others, connected with that boat, are charged under the act of congress of 1838, which provides as follows:

"Sec. 12. And be it further enacted, that any captain, engineer, pilot, or other person employed on board of any steamboat or vessel propelled in whole or in part by steam, by whose misconduct, negligence, or inattention to his or their respective duties, the life or lives of any person on board of such vessel may be destroyed, shall be deemed guilty of manslaughter, and upon conviction thereof, before any circuit court of the United States, shall be sentenced to confinement, at hard labor, for a period of not more than ten years."

I shall not enter into any labored exposition of this law. It is not the practice of the United States courts to prepare elaborate charges for the edification of grand jurors. We would rather reserve our remarks until the whole case has been brought before us by counsel, as it then will become our duty to make a proper exposition of the law, and to say how far, by the conduct of parties, they had rendered themselves amenable to its provisions. I shall, therefore, limit my remarks to what I conceive to be a proper exposition of the law, and it will remain for you to ascertain if these parties have been brought within it. You are doubtless aware, generally, that the utmost endeavors have been made within these few years to gain an extraordinary velocity in the speed of steamboats. On one hand, there has been the spirit of rivalry and the spirit of gain to stimulate the owners and officers to attain the highest speed of velocity known to be attainable. Under these circumstances—as is natural—the utmost extent of speed has been required by owners and the public. The first essay in steam navigation was very slow,—probably not more than four or five miles an hour was attained. Next, we find they had reached ten or twelve miles; and in 1823, it was thought the acme of steam navigation to carry a boat from here to Albany between sun and sun, or within the same day. Now the steamboats on the same river have attained a velocity of twenty or twenty-five miles an hour. At first this rivalry for speed was only between boats running on the same river with equal advantages, but latterly a railroad with steam-cars has been laid alongside the river, and the contest has been between the boats on the river and the train on the railroad, until the former have been propelled through the water with almost the same velocity as the latter on the railroad. The same velocity of steam appears to produce different effects when brought to bear in different ways, producing danger in one case, yet harmless in another. Thus one object appears to have been to employ the least possible weight of

machinery consistent with safety in the construction of the boat, and light boilers, which require extreme care on the part of the engineer and others engaged in navigating the boat. Now there is always a hazard to some extent in navigating vessels with steam, as in the force of steam employed in the diminution of water, and in the force of heat in the boiler. Then there is the hazard which arises from the hurry of the traveller, and from the desire of the captain to force up the amount of steam so as to make his boat excel others on the river.

The congress of the United States has enacted a law which requires these boats to be navigated on certain rules, and there is a state law which requires them not to go beyond a certain amount of speed, and not to pass each other; and requires them to blow off steam at landings, and imposes a heavy penalty for violations of the law. The act of congress for such negligence and inattention to duty as should occasion the loss of life, imposes the penalty—if proved guilty—of manslaughter, and punishes the offence with ten years hard labor in the state prison. The law is exceedingly stringent; for you perceive it goes beyond the motives of the parties. Their motives may indeed be praiseworthy. Yet if they have gone beyond the line of their duty and have been negligent or inattentive, then they are as amenable as if they intended to endanger human life, or do the act which resulted so deplorably. You will therefore go beyond the mere design, for it is not to be presumed that any one entertained any harm to any passenger on board that vessel. It must be presumed that the owners and officers would have the strongest desire to carry that boat with prudence and safety; but if you should find they have omitted to do what they ought to have done, or have done what they ought not to have done, they come within the terms of this act. If such is the case, they have been guilty of negligence, and it will be your duty to bring in a bill against them for a violation of the law. There can be no doubt but these gentlemen have already suffered greatly, not only in a pecuniary, but in a personal point of view. That you must disregard, and not permit your personal feelings to be excited, for the law does not look for victims, although you are to look for facts; and if the facts show that any persons have done what they ought not to have done, by making too large fires or raising too much steam, then it becomes your duty to find a bill against them. You are not to take hearsay evidence in relation to this matter, and you must have the evidence of witnesses to show what was done on board that boat to occasion the loss of life. As citizens we may be inclined to hear or know what is said of it, but when we come to proof we must take care to make a distinction between what has been said in a general point of view, and what can be proved in evidence. You will inquire if any officer of the boat has been guilty of "misconduct" on board. The court will not lay down any specific definition of that term, as that will more properly come before the judges of the court when they are called upon in relation to the interpretation of the facts for a final and judicial settlement of the case. In relation to the term "misconduct," the court would say it was any act which would result in the loss of life on the part of the captain and the engineer, in not properly regulating the fires or the amount of steam, or in any other act which might come within the term "misconduct," as employed by congress; in any neglect of duty like to create danger,—for congress has imposed upon these officers the necessity of doing everything necessary to be done, as well as to avoid all negligence. You may find they have been guilty of negligence in not taking proper precautions, just as much as if they purposely exposed the lives of the passengers to the dangers of fire and explosion. If you find the officers of the boat did not do all they ought to have done, it was negligence; nay congress has gone further, and call inattention to duty an act of negligence; in this respect it would be negligence on the part of the captain, not to see that the fires were so regulated that the draft was not excessive, and the risk of fire increased; and you must inquire if the loss by fire on board this boat was occasioned by any act of the captain or the engineer, or by any neglect on their part, or that of any other officer. If you do so find you will bring in a bill, and you will have discharged your duty firmly, however painful it may have been to you individually. If, however, you can satisfy yourselves that any of the conclusions are not reliable, and without imputing wrong to any body, the cause of this disaster was accident, you will not find any bill against these parties. You will be careful not to be induced by public opinion to say that the provisions of this act have been violated on the part of these parties. You will pursue the rule of strict justice to the people, and also to the parties, and not subject the latter to the imputations brought against them unless on good and sufficient evidence. Your inquiries and decision will doubtless tend to appease the public mind, already excited, in relation to this calamity, and if the charges should prove groundless, you will release the owners and officers of the steamboat from the charges of neglect and inattention in the management of their vessel, and not convict them of negligence for merely doing or omitting to do those things which they are not amenable for under the act.

His honor then briefly alluded to the other cases on the calendar, and dismissed the grand jury to their duties. The court then adjourned.